IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES E. TOMLINSON,<br><br>    Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security;<br><br>    Defendant. | 8:11CV96<br><br>MEMORANDUM AND ORDER |

This matter is before the court on plaintiff's appeal of an adverse decision by the Social Security Administration. Filing No. 1. This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") that plaintiff is not disabled. The plaintiff appeals the Commissioner's decision to deny his applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*. This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff James E. Tomlinson ("Tomlinson") filed his application for benefits on February 7, 2007, alleging disability due to neck and back pain. *See* Filing Nos. 14 and 15, Social Security Transcript of Proceedings ("Tr."), at 86-95, 138. The Social Security Administration denied his applications initially and on reconsideration. Tr. at 63, 69. Tomlinson filed a Request for Hearing by an Administrative Law Judge ("ALJ"). Tr. at 77. On August 25, 2009, the ALJ found that Tomlinson was not disabled as defined in the Social Security Act and subsequently denied disability benefits. Tr. at 11-20. Tomlinson filed a Request for Review of the Hearing Decision by the Appeals Council.

Tr. at 5. On October 29, 2009, Tomlinson submitted new evidence to the Appeals Council that showed he underwent surgery for a revision of his C4-5 fusion subsequent to the ALJ hearing. Tr. at 5, 493-518, 786. On January 23, 2011, the Appeals Council denied claimant's request for review. Tr. at 1-3. Tomlinson filed a complaint to this court on March 16, 2011. Filing No. 1.

Tomlinson was born in 1963. At the time of the alleged onset of his disability he was forty-two years old. Tomlinson was previously employed as a janitor, foundry worker, building maintenance worker, and production painter. Tr. at 189. He has a high school education. Tr. at 30. He also has special vocational training in heating and air conditioning. Tr. at 145.

Tomlinson was first injured in September 2004 while working at Omaha Steel Castings Company. Tr. at 400. The company doctor, Dr. Arthur West, assessed a hand sprain. Tr. at 401. Tomlinson received a cortisone shot and believed he had healed. Tr. at 33. In February 2006, while still working for Omaha Steel, Tomlinson felt something in his neck pop while packing a box. Id. Tomlinson testified that after this injury his arm began to hurt as it had after the first injury, and that he also experienced back pain and back spasms. Tr. at 34.[1] Tomlinson met with Dr. West the same day. Id. Dr. West diagnosed elbow and forearm sprains and strains, prescribed Naproxen, and instructed Tomlinson to avoid forced gripping or squeezing with his hands. Tr. at 535. At a follow-up visit on February 20, 2006, Tomlinson reported worsening symptoms and Dr. West

---

[1] This work injury resulted in a lump sum settlement with Omaha Steel Castings Company on May 21, 2008. Tr. at 203-208. This settlement included the following statement, endorsed by Tomlinson: "Generally, I have not returned to work because I have not found a job, but I intend to return to the workforce and am currently seeking employment. I am waiving the vocational rehabilitation I was awarded, because I am not ready to go through a vocational rehabilitation program at this time." Tr. at 208.

2

instructed modified activity of no lifting over twenty pounds and no pushing or pulling of over twenty pounds. Tr. at 537. At a follow-up visit on March 29, 2006, Dr. West referred Tomlinson to a hand orthopedic specialist, Dr. Mercier. Tr. at 545.

Dr. Mercier diagnosed probable tendinitis and possible cervical disk syndrome based on a normal neurologic exam and unremarkable cervical spine x-rays. Tr. at 549. Dr. Mercier advised Tomlinson that he could maintain current work restrictions because he had reported some symptom improvement. Tr. at 549. In an April 19 examination, Dr. Mercier noted that Tomlinson had full range of motion in his cervical spine and elbows and showed no pain or tenderness during movement. Tr. at 550. In an April 28 examination, Tomlinson reported sporadic elbow pain while lifting. Tr. at 551. Dr. Mercier determined that based on the normal examination findings, further testing seemed unnecessary. *Id.*

Tomlinson met with Dr. Mercier for a follow-up visit on May 12, 2006, and exhibited full cervical range of motion and a normal neurologic examination. Tr. at 554. However, Dr. Mercier diagnosed arm pain of unknown cause and ordered an MRI scan. *Id.* Tomlinson lost his job at Omaha Steel Castings in May of 2006. Tr. at 27-28. On June 16, 2006, Dr. Mercier informed Tomlinson that his insurance provider might not authorize an MRI scan and agreed with Tomlinson that it "would probably be a good idea" for him to go through his family physician. Tr. at 557. At this time Dr. Mercier also told Tomlinson that he did not think the symptoms sounded potentially serious, and that he believed Tomlinson could look for work. *Id.*

While receiving treatment from Dr. Mercier and Dr. West, Tomlinson also scheduled appointments with his family physician, Dr. Nichelle Horton-Brown. In

February 2006, Dr. Horton-Brown referred Tomlinson to a physical therapist. Tr. at 683. Tomlinson testified that he went to physical therapy in the spring of 2006. Tr. at 34. Tomlinson attended three physical therapy sessions, but could not attend further sessions, because he lacked a referral from a company-approved doctor. Tr. at 561-62.

On July 6, 2006, Tomlinson met with Dr. Horton-Brown, who diagnosed probable cervical disc problems with radiculopathy in both arms. Tr. at 678. On August 25, 2006, Dr. Horton-Brown ordered a cervical MRI that revealed foraminal stenosis at the C7-T1 level and central stenosis at the C4-5 and C3-4 levels. Tr. at 673. Dr. Horton-Brown referred Tomlinson to a neurosurgeon, Dr. Wendy Spangler. Tr. at 677-78. Dr. Spangler determined that the MRI results showed extensive spondylitic disease and recommended surgery. Tr. at 632-34.

In September 2006, Tomlinson underwent surgery for C3-4, C4-5 anterior cervical discectomy with fusion and plating. Tr. at 668. On a follow-up visit to Dr. Spangler in December, X-rays of the cervical spine showed increased bone density across disk spaces and that the surgical hardware was well-positioned. Tr. at 624. At this time Tomlinson informed Dr. Spangler that he still felt intermittent tingling in his hands and ongoing neck and back pain, but that he experienced good improvement overall. *Id.* Dr. Spangler wrote Tomlinson a note indicating he could not return to work, but that he would be re-evaluated on January 15, 2007. Tr. at 589. Dr. Spangler referred him to physical therapy, but Tomlinson reported little improvement after eight sessions. Tr. at 583, 588.

Between January 18, 2007, and January 4, 2008, Tomlinson met with two pain specialists: Dr. Stephen Hosman and Dr. Chris Anderson. Tomlinson met with Dr.

Hosman on January 18, 2007, with complaints of severe upper back and neck pain described as "throbbing, shooting, aching, tender." Tr. at 598-600. The pain affected Tomlinson's appetite, ability to concentrate, enjoyment of life, sleep, normal work routine, ability to walk, and general activity. Tr. at 646. Dr. Hosman prescribed and modified Tomlinson's pain medication over several appointments, and concluded that he "[had] nothing further to offer" in terms of treatment. Tr. at 232, 600, 605, 612. Dr. Hosman referred Tomlinson to Behavioral Health for behavioral pain management and emotional support. Tr. at 715.

Dr. Anderson examined Tomlinson on May 29, July 3, August 13, September 10, and October 5 of 2007 and January 4, 2008. Tr. at 468, 471, 477, 479, 724. Dr. Anderson opined on the May and July visits that he did not feel Tomlinson was permanently and totally disabled, and further recommended that Tomlinson should seek some form of competitive employment. Tr. at 480, 726. On the May 29 visit, Dr. Anderson noted that Tomlinson "[had] applied for a couple jobs, but [was] currently not working." Tr. at 725. On the July 3 visit, Dr. Anderson stated that he had discussed with Tomlinson that he did not feel Tomlinson would be able to decrease his pain unless he worked at home to increase his active range of motion. Tr. at 480. On the September 10 visit, Dr. Anderson stated that he agreed with Dr. Spangler that Tomlinson needed to "follow through with a formal Function Capacity Evaluation ("FCE") to assist with more permanent work restrictions." Tr. at 472.

On September 24, 2007, Michelle Murdock, PT, examined Tomlinson for a FCE. Tr. at 209-12. Tomlinson was unable to complete the FCE, as he reported severe pain two hours into the evaluation. Tr. at 209. On November 5, 2007, Dr. Spangler reviewed

5

the invalid FCE and stated that, though she had not evaluated Tomlinson for several months, based on that last evaluation and his continued pain complaints, she would place him in the sedentary work category. Tr. at 743. She further recommended that he have the opportunity to change positions frequently and that he have frequent re-evaluation regarding the work restrictions. *Id.*

On October 5, 2007, Dr. Anderson examined Tomlinson and noted that due to the non-valid FCE, he was unable to use the FCE to assist with determining permanent work restrictions. Tr. at 468. However, Dr. Anderson estimated that Tomlinson should be limited to light duty work with frequent changes in position. *Id.* On the January 4 visit, Dr. Anderson noted that he continued "to believe [Tomlinson was] at maximum medical improvement for his work-related neck injuries" and advised Tomlinson to continue exercise, but did not specify work restrictions. Tr. at 779.

On July 2, 2009, Dr. Spangler examined Tomlinson. Tr. at 780. Tomlinson stated that he continued to have pain in the back of his neck and right arm pain. *Id.* Dr. Spangler ordered an MRI scan, which showed a mild disc protrusion at the C6-C7 and a mild bulge at the C2-C3. Tr. at 781. Dr. Spangler also ordered a CT of the cervical spine. *Id.* Tomlinson requested a continuance of his July 6, 2009 ALJ hearing to await the CT results. Tr. at 124. The ALJ denied the continuance. *Id.*

On July 6, 2009, Tomlinson testified at the ALJ hearing about his condition. Tr. at 21-44. He stated that he was taking four different medications: Loratab, Hydroxyzine, Gabapentin, and Ibuprofen. Tr. at 39. Medical records indicated that he had been prescribed and tried other medications that did not resolve his pain symptoms. Tr. at 598. Tomlinson testified that he spent time on the Internet applying for jobs, was able to

6

drive, and could make the bed but did not have other hobbies or interests. Tr. at 41-42. Tomlinson indicated in his interrogatory that he also attended church, was able to take care of personal hygiene, and watched a couple hours of television a day. Tr. at 198-99. Tomlinson testified that his regular pain was nine out of ten, that he was limited to sitting thirty-five to forty minutes a day, that he was limited to standing or walking thirty-five to forty minutes a day, and that ninety percent of his days were bad days. Tr. at 43-44.

On July 27, 2009 Tomlinson met with Dr. Spangler to receive the CT results. Tr. at 505. The CT scan revealed an incomplete fusion at the C4-C5 as well as pseudoarthrosis at C4-C5 level. Tr. at 505, 508-09. On August 4, 2009, Tomlinson underwent surgery for a revision of the C4-C5 fusion. Tr. at 496-98. On March 15, 2010, Dr. Spangler stated that she did not feel Tomlinson "would be able to do any kind of physical work for any length of time" and that she would "continue to place Mr. Tomlinson in a sedentary work category with ability to change positions frequently." Tr. at 492.

## STANDARD OF REVIEW

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *See Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004) (*quoting Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (*citing Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, but "more

7

than a mere scintilla." *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (*quoting Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir.1990). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Perkins*, 648 F.3d at 897 (*quoting Medhaug*, 578 at 813).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) (*quoting Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision either because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) (*citing Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

When a case involves the submission of supplemental evidence to the Appeals Council subsequent to the ALJ's decision, the record includes that evidence submitted and considered by the Appeals Council. *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (*citing Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999)). The court's role in a situation such as this "is to determine whether the ALJ's decision is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." *Id.* (*citing Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)) (internal quotations omitted). As a practical matter, "this requires this court to

decide how the ALJ would have weighed the new evidence had it existed at the initial hearing." *Id.* While this is "a peculiar task for a reviewing court," this court may not reverse the ALJ's decision "merely because substantial evidence may allow for a contrary decision." *Id.*

## DISCUSSION

Tomlinson argues that the ALJ's decision is not supported by substantial evidence because the ALJ posed invalid hypothetical questions to the vocational expert ("VE"), the ALJ did not properly analyze Tomlinson's credibility, the ALJ made the RFC finding based only on a non-treating physician's assessment, and the ALJ did not properly evaluate the treating physicians' opinions. Tomlinson further argues that the Appeals Council erred by failing to evaluate all new and material evidence submitted by Mr. Tomlinson.

The ALJ must make findings in accordance with a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The ALJ determined that Tomlinson was not disabled under step five of the process because Tomlinson had the RFC to perform light work. However, the ALJ did not have access to all medical information of Tomlinson's medical condition because she did not grant a continuance to allow Tomlinson to receive his CT results prior to a hearing. This court must consider all evidence on the record, including new evidence that was unavailable to the ALJ. Viewing the record as a whole, the ALJ's determination under step five is not supported by substantial evidence because the hypothetical questions were inconsistent with Tomlinson's impairments, and the ALJ's decision relied on credibility and RFC findings that did not take into account Tomlinson's undiagnosed condition. This case should be remanded to the ALJ for rehearing.

9

### I. Hypothetical Questions

The ALJ has the burden under the fifth prong of the sequential evaluation process to provide information on jobs that Tomlinson could perform in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(v). Tomlinson argues that the VE's testimony cannot constitute substantial evidence towards determining whether there are available jobs in the national economy because the ALJ's hypothetical questions did not account for all of Tomlinson's physical impairments.

To assist an ALJ making a disability determination, a vocational expert ("VE") is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (*quoting Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). A VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater*, 115 F.3d 567, 572-73 (8th Cir. 1997), and *Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996)). Courts apply a harmless error analysis during judicial review of administrative decisions that are in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003).

>The ALJ asked the VE three hypothetical questions:
>
>[1.] The first question is for light exertional work which is going to preclude return to past work…. If the claimant could only occasionally lift or carry 20 pounds, frequently 10 pounds. Could stand, sit, or walk for six hours in an eight hour day. And could occasionally do postural activities such as climb, balance, stoop, kneel, crouch, crawl. Because of his neck surgery should avoid jobs that require him to do more than occasional overhead reaching. I'm going to say should avoid concentrated exposure to vibration. With that functional capacity could he—and also stay off of ladders, ropes, scaffolds and dangerous equipment. With that functional capacity could you identify some jobs that he could perform? ....
>
>[2.] Now the second question, if, as the claimant has mentioned, Dr. Spangler restricts him to not to lift over ten pounds, and if you take the same hypothetical that we had before but just add not to lift over ten pounds I'm still not finding that he needs to have a sitting down job because the surgery was to his neck. But not lift over ten pounds. Could stand, sit, or walk six hours out of an eight hour day. What, that, would that preclude the three jobs you've identified? ….
>
>[3.] If the claimant's testimony is considered credible do you think he could do the type of jobs that you've identified? Now I'm talking about the number of bad days he has, and the severity of his pain, his symptoms?

Tr. at 45-48. In response to the first question, the VE stated that the positions available included information clerk, cashier, and office helper. Tr. at 46. In response to the second question, the VE stated that the information clerk position met the requirements, and other available positions included addresser and order clerk. Tr. at 47-48. In response to the third question, the VE stated that based on Tomlinson's testimony, Tomlinson "would not be demonstrating the persistence and pace to maintain full time competitive employment." Tr. at 48.

The first two hypothetical questions were invalid because they did not include Tomlinson's limitations in light of his subsequent medical diagnosis. Specifically, the questions did not include Tomlinson's inability to do physical work for any length of time, his need for a sedentary work category, and his need for the ability to change positions

11

frequently. Under *Taylor*, the VE's testimony cannot be considered substantial evidence unless the ALJ included all of Tomlinson's deficiencies in the hypothetical question. 118 F.3d at 1278. Tomlinson testified that he was limited to sitting thirty-five to forty minutes a day, and standing or walking thirty-five to forty minutes a day. Tr. at 43-44. The only medical information on the record that takes into account Tomlinson's subsequent diagnosis and surgery indicates that Tomlinson should be placed "in a sedentary work category with ability to change positions frequently" and also states that Tomlinson would not be able "to do any kind of physical work for any length of time." Tr. at 492. While the ALJ discounted Tomlinson's credibility on his subjective pain, the ALJ did not have the medical information to evaluate Tomlinson's credibility in light of his subsequent medical diagnosis and his need to undergo surgery. Therefore, the first two hypothetical questions were invalid because they did not include Tomlinson's inability to do physical work, his limitation to sedentary work, and his need to change positions frequently.

The third hypothetical question is based on Tomlinson's credibility. When a hypothetical question presented to the VE properly characterizes a claimant's disabilities and the VE testifies that there are no jobs this individual could perform, the court may conclude that remand is unnecessary and enter a finding that the claimant is disabled. See *Taylor*, 118 F.3d at 1279. However, such a finding is appropriate only where the record overwhelmingly supports a disability finding. *Id.* In this case, the court finds it is appropriate to remand to the ALJ to consult with a VE to determine whether there are jobs in the national economy that Tomlinson can perform based on all of his actual limitations during the relevant time period.

**II. Tomlinson's Credibility**

Tomlinson argues that the ALJ did not properly evaluate his credibility. The ALJ determined that Tomlinson's earning record and work history reflected favorably on his credibility, but found that those factors were outweighed by several other factors: that Dr. Spangler did not impose work restrictions; that Tomlinson waived vocational rehabilitation during the workers' compensation settlement; that Tomlinson continued to apply for jobs; and that Tomlinson failed to continue pain management therapy. Tr. at 17-18. The ALJ discredited Tomlinson's subjective complaints of excruciating pain when evaluating his RFC, stating that "[Tomlinson's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment" and that "[t]hese allegations appear exaggerated in light of the record as a whole." Tr. at 14-15, 18. The ALJ concluded that Tomlinson's symptoms and impairments were "not as severe as alleged" and that she had not given great weight to Tomlinson's "implicit allegation that he [was] unable to engage in any and all kinds of full-time, competitive, gainful employment on a sustained basis." Tr. at 18.

The standard in the Eighth Circuit for evaluating a claimant's subjective complaints of pain in Social Security cases is *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *See Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011). An ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support the complaints. *Polaski*, 739 F.2d at 1322.

Absence of an objective medical basis supporting the degree of severity of a disability claimant's subjective complaints is just one factor to be considered when

evaluating the credibility of complaints and testimony. *Id.* "The [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

    1.    the claimant's daily activities;

    2.    the duration, frequency and intensity of the pain;

    3.    precipitating and aggravating factors;

    4.    dosage, effectiveness and side effects of medication;

    5.    functional restrictions.

The [ALJ] is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations." *Id.* Subjective complaints may be discounted if there are inconsistencies in the record as a whole. *Perkins*, 648 F.3d at 900 (*quoting Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001)).

In light of Tomlinson's diagnosis of an incomplete fusion of the C4-C5, pseudoarthrosis, and his subsequent surgery to treat these conditions, this case is remanded to the ALJ for further consideration. If the ALJ finds a claimant only partially credible, and a subsequent medical diagnosis calls into question the ALJ discounting the claimant's credibility, remand for further review may be appropriate. *See generally Minor v. Astrue*, 574 F.3d 625, 628 (8th Cir. 2009) (stating that the disability claim required remand for further consideration when the ALJ found claimant's complaints only partially credible but it was later discovered that the claimant suffered from lung cancer). Tomlinson suffered from an incomplete fusion of the C4-C5 and pseudoarthrosis of the spine during the relevant time period of his subjective

complaints, and Dr. Spangler stated that these medical issues could account for Tomlinson's neck pain and upper extremity complaints. Tr. at 505. These medical issues were undiagnosed at the time of the ALJ hearing, and may explain Tomlinson's subjective pain complaints. The ALJ should consider these medical issues in determining credibility on remand.

### III. RFC

Tomlinson argues that the ALJ's decision regarding Tomlinson's RFC is not supported by substantial evidence because the ALJ relied only on non-treating physician's assessments. The ALJ concluded that Tomlinson had the RFC to perform light work, with limitations to "occasional climbing, balancing, stooping, kneeling, crouching, and crawling." Tr. at 14. The ALJ further stated that Tomlinson was limited to occasional overhead reaching, avoiding concentrated exposure to vibrations, and that he should avoid ropes, scaffolds, ladders, and dangerous equipment. Tr. at 14. In making this determination, the ALJ referred to opinions by Dr. Reed, Dr. Harley, Dr. Spangler, and Dr. Anderson. Tr. 16-18.

RFC is defined as the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184 (July 2, 1996). RFC is what an individual can still do despite his impairments and the resulting limitations. *Id.* While RFC is a medical question, RFC is not based solely on "medical" evidence. See *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); See *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (holding that the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including

medical records, observations of treating physicians and others, and an individual's own description of the limitations).

The ALJ's decision that Tomlinson had the RFC to perform light work is not supported by the supplemental evidence. Tomlinson argues that the ALJ erred by relying only on the non-treating physician's assessments. The court disagrees with this characterization. The ALJ did give weight to Dr. Spangler's and Dr. Anderson's findings in determining Tomlinson's RFC. Tr. at 16-18. However, the ALJ did not have all medical information available to her regarding Tomlinson's condition because Tomlinson had not yet received his CT scan results.

None of the medical opinions available to the ALJ at the hearing considered Tomlinson's incomplete fusion of the C4-C5 and pseudoarthrosis, because during the relevant time period his condition was undiagnosed. The supplemental evidence available to this court that considers this medical condition is a letter from Dr. Spangler on March 15, 2010, stating that she would "continue to place [Tomlinson] in a sedentary work category with ability to change positions frequently." Tr. at 492. This is inconsistent with the ALJ's finding that Tomlinson could perform light work.

The finding of Tomlinson's RFC to perform light work is inconsistent with medical information subsequent to Tomlinson's diagnosis and surgery. This case is remanded for rehearing to develop the record concerning Tomlinson's RFC during the relevant time period, taking into account that he suffered from an incomplete fusion of the C4-C5 and pseudoarthrosis.

### IV. Treating Physician's Opinion

Tomlinson argues that there is not substantial evidence on the record to support a finding of not disabled because the ALJ did not give proper weight to the treating physician's opinion. This court finds that the ALJ did appropriately consider Dr. Spangler's opinion in addition to Tomlinson's other treating physicians, but that Tomlinson's subsequent diagnosis of an incomplete fusion of the C4-C5 and pseudoarthrosis requires remand to the ALJ for rehearing.

### V. Appeals Council

Tomlinson argues that the Appeals Council erred by failing to evaluate the new and material evidence. The Appeals Council is required to consider additional evidence "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012) (*quoting Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). "The Appeals Council's failure to consider the evidence 'may be a basis for remand by a reviewing court.'" *Id.* (*quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995)).

The court's role is not to evaluate the Appeals Council's denial of review, but rather to consider the new evidence and determine whether the ALJ's decision remains supported by substantial evidence. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). If the Appeals Council failed to consider the evidence of Tomlinson's diagnosis subsequent to the ALJ hearing, the court would consider remand for this reason alone. However, the record indicates the Appeals Council did receive the additional evidence of Dr. Spangler's operative notes, medical records, and statement. Tr. at 4. The Appeals Council stated in the denial of review that it "considered the operative report and

17

accompanying notes and medical source statement of…Wendy Spangler, M.D." and that it "found that this information does not provide a basis for changing the [ALJ's] decision." Tr. at 1-2. This language is sufficient to show the Appeals Council considered the new evidence before denying review. *See Martinez v. Barnhart, 444 F.3d 1201, 1207-08 (10th Cir. 2006)*.

The court finds that substantial evidence on the record does not support the ALJ's decision and remands the case for further review consistent with this Memorandum and Order.

## CONCLUSION

THEREFORE, IT IS ORDERED that the ALJ's determination is reversed. The court orders this case remanded for proceedings consistent with this decision.

Dated this 6th day of September, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.